Case 4:22-cv-00652   Document 30   Filed on 07/20/22 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
July 20, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDALL KALLINEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-652 |
| | § | |
| JUDGE MICHAEL NEWMAN, | § | |
| in his individual capacity, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Individuals running for judicial offices in states that elect judges often use social media platforms, such as Facebook, as part of their campaigns. The issue in this case is whether that becomes a government-created public forum under the First Amendment. The defendant is a probate judge running for reelection, who used a Facebook page to promote his campaign. The plaintiff is a lawyer who posted three negative comments on the Facebook page. The judge deleted those comments and blocked the lawyer from viewing or posting on the Facebook page. The lawyer sued, alleging that the judge was liable for violating the lawyer's First Amendment rights. The judge has moved to dismiss.

After careful consideration of the pleadings, the parties' arguments, and the applicable law, the court grants the judge's motion to dismiss. The dismissal is with prejudice and without leave to amend because amendment would be futile. The lawyer has already filed a first amended complaint that still fails to plead facts that could show that the judge was acting under color of state law or that the Facebook campaign page was government-created public forum under the First Amendment.

The reasons are explained below.

I.  **Background**

Judge Michael Newman was a Harris County probate judge who ran for reelection in March 2022 and used a Facebook page to promote his campaign. (Docket Entry No. 14 at ¶ 7; Docket Entry No. 18 at 3). Randall Kallinen, a lawyer, posted three comments on three separate posts on Judge Newman's Facebook campaign page. Mr. Kallinen's comments accused Judge Newman of having "court cronies" and doing "favors for them at the expense of other litigants." Mr. Kallinen stated that he would not vote for Judge Newman because he thought the judge showed favoritism in court. (Docket Entry No. 14 at ¶ 10; Docket Entry No. 14-1 at ¶ 8). Mr. Kallinen had represented a client in Judge Newman's court, apparently with little success.[1] (Docket Entry No. 14 at ¶ 11; Docket Entry No. 18-2). In response to Mr. Kallinen's Facebook commentary, Judge Newman deleted his comments and blocked him from viewing and posting on the judge's Facebook campaign page. (Docket Entry No. 14 at ¶¶ 3, 13).

Mr. Kallinen sued Judge Newman in his individual capacity under 42 U.S.C. § 1983 for violating Mr. Kallinen's First Amendment rights. (*Id.* at ¶¶ 1, 3, 15–22). Judge Newman has moved to dismiss. (Docket Entry No. 18). Mr. Kallinen has responded, and Judge Newman has replied. (Docket Entry Nos. 23, 28).

II. **The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to

---

[1] Linda Goehrs, Mr. Kallinen's opposing counsel in a case before Judge Newman, later worked as a recruitment aide on Judge Newman's reelection campaign. (Docket Entry No. 17 at 2; Docket Entry No. 17-1).

relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

**III.   Analysis**

Judge Newman argues that Mr. Kallinen cannot show that he was acting under color of law, and that he is entitled to qualified immunity. Mr. Kallinen argues that Judge Newman was acting under color of state law when he deleted the negative comments and blocked Mr. Kallinen from viewing or posting on the Facebook page, and that Judge Newman violated clearly established First Amendment rights.

**A.   Acting Under Color of State Law**

Judge Newman argues that he was not acting under color of state law by having and maintaining a Facebook page to support his campaign for reelection as a state probate judge. He argues that he created and maintained the Facebook page as a private individual, not as a state officer. Mr. Kallinen argues that Judge Newman acted under color of law because he used his Facebook campaign page "mostly" for matters related to official duties, although Mr. Kallinen does not specify those matters or discuss the details of how the campaign for reelection as probate judge required or involved carrying out the duties of a probate judge.

Under § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation and internal quotation marks omitted). "Whether an officer is acting under

color of state law does not depend on his on- or off-duty status at the time of the alleged violation." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2005) (citing *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991)). "Rather, the court must consider: (1) whether the officer 'misuse[d] or abuse[d] his official power,' and (2) if 'there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties.'" *Id.* at 464–65 (alterations in original) (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002)).

The key question in the Fifth Circuit is whether a defendant official "used his official power to facilitate his actions." *Bustos*, 599 F.3d at 465. The issue is whether Judge Newman "used his official power to facilitate" blocking Mr. Kallinen from accessing the reelection campaign Facebook page. *Id.* at 465; *see also Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988) (a mayor's private acts, such as making false statements and coordinating false newspaper articles, failed to establish that she acted under color of state law because they were actions that any ordinary citizen could accomplish without an official position). Blocking access to a Facebook

page can be done by any person who has such a page, without needing or using the power of any office.

Mr. Kallinen alleges the following facts to support his claim that Judge Newman acted under color of state law when deleting Mr. Kallinen's negative posts and blocking Mr. Kallinen from accessing the Facebook campaign page:

- The Facebook campaign page included a cover photo depicting Judge Newman's campaign image and a profile photo showing his headshot with the words "Experience Matters"—a campaign slogan. (Docket Entry No. 14-2 at 2).

- Judge Newman posted photos of himself in his judicial robe and on the bench. (Docket Entry No. 14 at ¶ 7; Docket Entry No. 14-2 at 7, 10; Docket Entry No. 14-5 at 3, 6, 8).

- Judge Newman has another Facebook page that he uses for personal purposes, such as interacting with friends and family. (Docket Entry No. 14 at ¶ 9; Docket Entry No. 14-4).

- "[M]any posts and photographs" depict Judge Newman performing his "official duties." (Docket Entry No. 14 at ¶ 7), and Judge Newman used his Facebook campaign page at least "60-70%" for "official announcements and communications from his court" and other activities related to his "official duties." (*Id.* at ¶ 8).

Mr. Kallinen attaches to his complaint images of several examples of Judge Newman's posts. They include the following:

- "The latest technology upgrade at Probate Court 2. Large screen monitor outside courtroom entrance displaying hearing information." (Docket Entry No. 14-5 at 2).

- "Litigation Practice Tip: Rule 803 (6) of the Texas Rules of Evidence (TRE) is of primary interest in the admissibility of business records and can be very useful in cases involving breach of fiduciary duty, elder abuse & financial exploitation. Practitioners should refer to this rule together with TRE 902 (10)." (*Id.* at 3) (This post included an image of a handwritten note about Rule 803, Hearsay Exception No. 6, and a picture of the cover of the *Texas Rules of Court: Volume I.*).

- "Notice: Effective January 12, 2022, Probate Court 2 is adding another probate of will docket to its weekly schedule in order to accommodate the needs of the public . . . . It will allow us to probate up to 75 wills a week and permit the lawyers we service to begin their administrations sooner. . . . I am very, very appreciative and thankful for our court reporter, Mary Ann Rodriguez. . . . Mary Ann's diligence and devotion has allowed court 2 to hear more cases this year than in any prior year that I have been on the bench. Special thanks to Delores, Karina and Janet for assisting with the increased number of hearings and to the

6

- best court manager any judge could have asked for, Yolanda Lopez. . . . " (*Id.* at 6) (This post included a photograph of Judge Newman in his judicial robe).

- "With appreciation and thanks to the Harris County Commissioners Court, Probate Court 2 technology upgrades have been installed and are now fully operational. Lawyers and their clients will be able to start using the new equipment next week. . . ." (*Id.* at 7) (This post included four images of video equipment, including monitors and a TV, in Judge Newman's courtroom).

- "Today's contest case was the 110th trial of my career. Counsel superbly represented their respective clients. The professional courtesy they extended to each other, the opposing parties, the witnesses and the Court was exemplary and very appreciated." (*Id*. at 8) (This post included three images of Judge Newman in his judicial robe, seated on the bench; two of the images show the sign on his desk with the words, "Judge Michael Newman: Probate Court #2.").

The Fifth Circuit has not directly addressed the question of when a public official using a social media account is acting under color of law. Other circuits and district courts have considered this issue. These courts examine such factors as whether the public official's campaign Facebook or other social media page bore the trappings of an official account and functioned as an important tool of governance; whether there was pervasive entanglement between the official's acts involving the campaign page and acts in performing the duties of the office; and whether the official misused his power in connection with the social media page. *Campbell v. Reisch*, 986 F.3d 822, 825–27 (8th Cir. 2021); *Davison v. Randall*, 912 F.3d 666, 680–81 (4th Cir. 2019); *Clark v. Kolkhorst*, No. 1:19-CV-198-LY, 2021 WL 5783210, at *3 (W.D. Tex. Dec. 7, 2021). As the Sixth Circuit has put it, "[s]o just like anything else a public official does, social-media activity may be state action when it (1) is part of an officeholder's 'actual or apparent dut[ies],' or (2) couldn't happen in the same way 'without the authority of [the] office.'" *Lindke v. Freed*, 37 F.4th 1199, 1203 (6th Cir. 2022) (citation omitted).

In *Lindke v. Freed*, James Freed had a public Facebook page when he was appointed to be the city manager for Port Huron, Michigan. 37 F.4th at 1201. Freed described himself as a dad, a

husband, and as City Manager in his "about" section on his Facebook page, but he also listed the Port Huron website as his Facebook page website and the City's general email address as the page's contact information. Freed posted about numerous topics, including "his daughter's birthday, his visits to local community events, and his family's weekend picnics," along with "some of the administrative directives he issued as city manager" and the COVID-19 policies he helped initiate. *Id.* When one citizen responded negatively, Freed blocked him from the Facebook page. *Id.* at 1202. The Sixth Circuit concluded that Freed was not acting under color of state law because "no state law, ordinance, or regulation compelled Freed to operate his Facebook page," the Facebook page did not belong to the office of city manager, Freed did not rely on government employees to maintain the Facebook page, his posts did not carry the force or imprimatur of law merely because the page belonged to a public official, and Freed "did not operate his page to fulfill any actual or apparent duty of his office." *Id.* at 1204–07.

In *Campbell v. Reisch*, the Eighth Circuit held that a Missouri state representative did not act under color of law when blocking a constituent from a Twitter page that she created to announce her candidacy for office. 986 F.3d at 823. The *Reisch* court held that the defendant created the account as a private individual campaigning for office, not as an elected official. The *Reisch* court noted that although a "private account can turn into a governmental one if it becomes an organ of official business, . . . that is not what happened here." *Id.* at 826. The state representative "used [the account] overwhelmingly for campaign purposes." *Id.* The posts "frequently harkened back to promises she made on the campaign trail, and [ ] touted her success in fulfilling those promises and in her performance as a legislator." *Id.* Although the posts occasionally "provide[d] updates on where certain bills were in the legislative process or the effect certain recently enacted laws had on the state," the *Reisch* court concluded that "sporadic

engagement in these activities does not overshadow what we believe was quite clearly an effort to emphasize [the defendant's] suitability for public office." *Id.* at 826–27 (internal citations omitted); *Kolkhorst,* 2021 WL 5783210, at *5.

Other courts examining whether a social media page involved government action similarly look to whether the "trappings" of an official-state run account are present. *See, e.g., Knight First Amend. Inst. at Columbia Univ. v. Trump,* 928 F.3d 226, 235–36 (2d Cir. 2019), *cert. granted, judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. At Columbia Univ.*, 141 S. Ct. 1220 (2021) (President Trump's Twitter account had "all the trappings of an official, state-run account" because it was headlined "45th President of the United States of America"; it depicted the president "engaged in the performance of his official duties"; and the president used the account to announce matters related to official business and perform the elements of his office, such as announcing cabinet-level staff changes, major national policy changes, and foreign policy decisions); *Davison*, 912 F.3d at 680–83 (a county chair "clothed [her Facebook] page in the trappings of her public office," such as her official title, a chosen category of "government official," a web address for the county website, and official county contact information, and she used the Facebook page to "further her duties as a municipal official" by soliciting public input on policy issues).

Like the candidate's Twitter page in *Reisch*, Judge Newman's Facebook page was used to campaign for office, not to conduct the duties of that office. The page showed a "campaign promotion" photograph of Judge Newman, accompanied by the slogan, "Experience Matters." (Docket Entry No. 14 at ¶ 7; Docket Entry No. 14-2 at 2). The page listed the contact email ReElectJudgeNewman@gmail.com, which is a private campaign address, not an official court email address. (Docket Entry No. 14-2 at 2). The page's subheading included Judge Newman's

official title as the Judge of Probate Court No. 2, but that was also the title of the office to which he was seeking reelection. (*Id.*). The page's subheading also included the description, "1 of 2 Jewish Probate Court Judges ever elected," (*id.*), which is "consistent with a desire to create a favorable impression of [Judge Newman] in the minds of [his] constituents," not a sign of an official, state-run page. *Reisch*, 986 F.3d at 827. Judge Newman's Facebook page was a reelection campaign social media page that did not bear the trappings of an official state-run account.

The facts here are even stronger for finding private action, not state action, than in *Lindke v. Freed*. In that case, the Facebook page was maintained by a sitting city official who was not seeking reelection to the office and used the Facebook page in carrying out some of the duties of the office he held. In this case, by contrast, Judge Newman used his Facebook page to seek reelection as a judge, not to conduct the business of that office.

Judge Newman's official duties as a judge include issuing rulings, opinions, orders, and conferring with parties. Mr. Kallinen does not allege that Judge Newman used the Facebook campaign page to perform his duties as a judge, such as conferring with parties or counsel or to issue orders or rulings. Under the "traditional definition" of "color of state law," Judge Newman did not use his Facebook campaign page to conduct official judicial business. *See Kolkhorst*, 2021 WL 5783210, at *4–5 (a sitting Texas state senator was not acting under color of law when she and her campaign staff blocked users and deleted comments from her Facebook campaign page).

Although Mr. Kallinen generally—and conclusorily—pleads that Judge Newman used his Facebook campaign page "for official announcements and communication from his court, depictions of his official duties, and dispensation of public advice related to his official duties, as well as commentary from and interacting with citizens with respect to his service as an elected probate judge," none of the facts Mr. Kallinen alleges, or the record this court may consider at this

10

stage, bears this out. (*See* Docket Entry No. 14 at ¶ 8). To the contrary, the examples of posts Mr. Kallinen relies on, and the well pleaded alleged facts, show that Judge Newman's posts consisted of tips about the rules of evidence, communications about new technology in the courthouse, the probate court's docket load, and a celebration of Judge Newman's 110th career trial. Yes, Judge Newman is shown in his robe, but these posts do not show that Judge Newman was using his Facebook campaign page to conduct his judicial duties. None of the allegations or examples are of posts about specific cases or rulings. None of the posts inform attorneys or litigants about matters they might have in his court, and none of the posts offers or invites comment about specific matters or other official court business.

Before the primary, in November 2021, Judge Newman posted a reminder of his reelection campaign and the upcoming election day. (Docket Entry No. 14-2 at 2). In February 2022, Judge Newman posted an announcement of an endorsement by a local lawyer. (*Id.* at 3). In that same month, he posted to remind viewers about early voting, to ask for votes in the primary, and to publicize his campaign website address, ReelectJudgeNewman.com. (*Id.* at 10). These posts are consistent with the use of the Facebook page to campaign for reelection as a probate judge, not to conduct any of the official duties of a sitting probate judge. *Cf. Faison v. Jones*, 440 F.Supp.3d 1123, 1134 (E.D. Cal. 2020) (the plaintiffs alleged facts showing that the sheriff was acting under color of state law in maintaining his Facebook page because his duties included representing the interests of the sheriff's department; many of the posts were on behalf of, and represented, the sheriff's office; and other posts informed the public about developments in specific cases the sheriff's office was handling).

Last, Mr. Kallinen has not alleged facts that could show that Judge Newman "misused his power while clothed in the authority of law." *Kolkhorst*, 2021 WL 5783210, at *3. "Misuse of

11

power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941) (internal quotation marks omitted) (election officials acted under color of law when altering and falsely counting ballots). Judge Newman's power as a probate judge was not what enabled him to delete Mr. Kallinen's comments from the Facebook page or to block Kallinen from further access to that page. Judge Newman's Facebook campaign page was not operated as an official state website under Judge Newman's judicial authority. Judge Newman's official judicial authority was neither invoked nor implicated by his Facebook activity in general or as it concerned Mr. Kallinen. There is no allegation that Judge Newman retaliated against Mr. Kallinen's negative Facebook comments by disfavoring Mr. Kallinen in litigation pending before Judge Newman's court. Indeed, Mr. Kallinen alleges, and complained in his Facebook posting, that Judge Newman had already shown favoritism toward a lawyer opposing Mr. Kallinen in a case. Judge Newman was not acting "under color of law" when he deleted Mr. Kallinen's comments and blocked him from the campaign Facebook page. Mr. Kallinen fails to state a § 1983 claim on which relief can be granted.

After the briefing on Judge Newman's motion to dismiss was complete, Mr. Kallinen moved for leave to file a second amended complaint to: (1) add allegations related to his continued inability to post on Judge Newman's Facebook page and request injunctive relief; (2) add a footnote that clarifies that Mr. Kallinen had provided a snapshot but not a full picture of Judge Newman's Facebook posts; and (3) allege that in "the months leading up to the primary election up until the date of the primary, Judge Newman's Official Page, was used mostly (about 60%) for his reelection campaign, official announcements and communication from his court, depictions of his official duties, and dispensation of public advise [*sic*] related to his official duties, as well as

commentary from and interacting with citizens with respect to his service as an elected probate judge." (*See* Docket Entry Nos. 29, 29-1). Even considering these allegations, the court's analysis is unchanged. These allegations do not sufficiently plead that Judge Newman's Facebook campaign page was intertwined with, or furthered, his official duties as a Harris County probate judge. Nor do they plead what those "official duties" were. Mr. Kallinen's motion for leave to amend, (Docket Entry No. 29), is denied.

### B.  Qualified Immunity

Even if Mr. Kallinen could allege that Judge Newman acted under color of state law, and as a result was engaging in the government action required for any First Amendment claim, Mr. Kallinen's claim fails for an additional reason. The facts alleged show that Judge Newman is entitled to qualified immunity because there was no clearly established law that made the Facebook campaign page a government-created forum subject to First Amendment protection.

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted).

A plaintiff seeking to overcome qualified immunity must allege facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011);

13

*see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

The first prong requires the plaintiff to allege facts that could support a finding of a constitutional rights violation. *Pearson*, 555 U.S. at 232. The second prong requires the plaintiff to show that "'the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (alterations in original) (citation omitted). "To defeat qualified immunity, a plaintiff must demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Shumpert*, 905 F.3d at 321 (emphasis omitted) (quoting *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc)). "In determining what constitutes clearly established law, th[e] court first looks to Supreme Court precedent and then [to Fifth Circuit precedent]. If there is no directly controlling authority, [the] court may rely on decisions from other circuits to the extent that they constitute 'a robust consensus of cases of persuasive authority.'" *Shumpert*, 905 F.3d at 320 (citations omitted).

At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

As Mr. Kallinen argues, it is clear that under the First Amendment, the government may not prohibit public expression of ideas merely because the ideas are themselves offensive to some listeners. *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Street v. New York*, 394 U.S. 576, 592 (1969)). This principle applies not only to traditional forums like a public sidewalk, but also to "metaphysical" forums. *Rosenberger v. Rector & Visitors of Univ. of Va.*,

14

515 U.S. 819, 828 (1995).  The First Amendment protects against viewpoint discrimination by the government on a public forum, including one conducted through social media.  *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1735, 1737 (2017).  But Mr. Kallinen has not pointed to clearly established law showing that "[Judge Newman's] individual government official's social media profile [was] …a public forum."  *Swanson v. Griffin*, No. 21-2034, 2022 WL 570079, at *3 (10th Cir. Feb. 25, 2022)

Mr. Kallinen relies on *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440 (5th Cir. 2019), involving a county sheriff's office Facebook page.  *Id.* at 444.  The plaintiff in that case, a county resident, posted a comment criticizing the sheriff's office and its conduct of public business.  *Id.* at 445.  The sheriff's office deleted the comment and banned the plaintiff from the page, and the plaintiff sued.  *Id.*  Unlike the present case, there was no claim that the defendant was a private actor or that the Facebook page was maintained for the actions of a private citizen, even one seeking public office.  The sheriff's office was clearly a state actor and the Facebook page was maintained as part of its official business.  *Id.* at 448.  The Fifth Circuit assumed in its analysis that the Facebook page was a forum subject to First Amendment protection, which precluded the sheriff's office from discriminating based on the viewpoints of those posting comments.

Neither *Robinson* nor other cases clearly establish that a Facebook campaign page used by a citizen seeking reelection to an official position is a government-created forum subject to First Amendment protection.  There is no "robust consensus of cases of persuasive authority." *Shumpert*, 905 F.3d at 320 (citations omitted); *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir.

15

2019) ("The § 1983 plaintiff bears the burden of proof. And the burden is heavy: a right is clearly established only if relevant precedent has placed the constitutional question beyond debate.").

Cases from from other circuits agree only that the law on this issue is *not* clearly established. In *Swanson v. Griffin*, the Tenth Circuit found that the plaintiff failed to identify law clearly establishing when an individual government official's social media profile becomes a public forum, and that the Supreme Court had not addressed this question. 2022 WL 570079, at *3. The *Swanson* court noted that the Supreme Court, the Fourth Circuit, and a district court in the Sixth Circuit had expressed serious reservations about extending First Amendment protections to privately owned social media pages used by public officials because there was no consensus on the issue. *See id.; see also Davison*, 912 F.3d at 682; *Biden*, 141 S. Ct. at 1221; *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1009 (E.D. Ky. 2018)).

In *Blackwell v. City of Inkster*, No. 21-10628, 2022 WL 989212, at *1 (E.D. Mich. Mar. 31, 2022), a citizen filed a complaint against a mayor for deleting his comments and blocking him from the mayor's Facebook page after he had posted critical messages. The court found that the plaintiff adequately pleaded facts showing that the mayor's page was a public forum, but the court dismissed the plaintiff's claim against the mayor in his individual capacity based on qualified immunity. *Id.* at *13. The court noted the "dearth of Sixth Circuit authority addressing whether blocking critics and deleting their comments on municipal Facebook pages violates the First Amendment, and every court to consider the issue has noted its novelty." *Id.* at *12 (citing *Morgan*, 298 F. Supp. 3d at 1009; *Novak v. City of Parma*, 932 F.3d 421, 434 (6th Cir. 2019)).

The record does not overcome Judge Newman's qualified immunity. "While, as [Mr. Kallinen] points out, [*see* Docket Entry No. 14 at ¶ 16], the right to free expression in public fora has been clearly established for decades, the applicability of those doctrines to social media is

anything but." *Blackwell*, 2022 WL 989212, at *13; *see also Biden*, 141 S. Ct. at 1221 (Thomas, J., concurring) ("I write separately to note . . . the principal legal difficulty that surrounds digital platforms—namely, that applying old doctrines to new digital platforms is rarely straightforward."). Judge Newman is entitled to qualified immunity in his individual capacity on Mr. Kallinen's § 1983 claim. Judge Newman's motion to dismiss is granted.[2]

## IV.  Conclusion

Judge Newman's motion to dismiss the amended complaint, (Docket Entry No. 18), is granted, with prejudice, and Mr. Kallinen's motion for leave to amend, (Docket Entry No. 29), is denied. Judge Newman's motion to dismiss Mr. Kallinen's original complaint, (Docket Entry No. 12), is moot. The dismissal is without leave to amend because amendment would be futile. A dismissal order is entered separately.

SIGNED on July 20, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

---

[2] Mr. Kallinen's claims are insufficient to proceed, but not frivolous. Judge Newman's request for Rule 11 sanctions is denied.